# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 3958 | **DATE** | 8/2/2002 |
| **CASE TITLE** | James McGreal vs. Er. Eric Ostrov, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | AUG 05 2002 | |
| | Notified counsel by telephone. | | date docketed | 101 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES McGREAL,                                    )
                                                  )
                        Plaintiff,                )
                                                  )          No. 98 C 3958
        vs.                                       )
                                                  )          HONORABLE CHARLES R. NORGLE
DR. ERIC OSTROV; VILLAGE OF                       )
ALSIP; KENNETH WOOD, Alsip Police                 )
Chief; and DAVID SNOOKS,                          )
Alsip Police Lieutenant,                          )
                                                  )
                        Defendants.               )

DOCKETED
AUG 0 5 2002

## OPINION AND ORDER

CHARLES R. NORGLE, SR. District Judge

Before the court is a motion of Defendant, Village of Alsip, that is in substance a motion for summary judgment. For the following reasons, the motion is granted.

### I.    BACKGROUND

James McGreal is a long time police officer with the Village of Alsip, a south suburb of Chicago. This suit arises out of alleged retaliation that McGreal claims to have suffered after he unsuccessfully ran for mayor, and after he brought public attention to a number of issues involving illegal gambling, liquor licenses, the mayor of Alsip, the Alsip Police Department, and a local judge.

According to McGreal, his election bid and speech about these issues constituted an exercise of his First Amendment rights. McGreal claims that Defendants retaliated against him through a series of adverse employment actions for exercising those rights. In response to the alleged retaliation, McGreal filed this suit seeking relief under 42 U.S.C. § 1983.

This case was scheduled for trial in the fall of 2001, and the parties submitted the required final pre-trial order at that time. After reviewing the final pre-trial order, the court continued the trial and invited counsel to file motions concerning, *inter alia*, municipal liability under Monell v. New York Dept. of Social Servs., 436 U.S. 658 (1978). The Village of Alsip (hereinafter "the Village") has submitted a motion, which is in substance a motion for summary judgment, arguing that McGreal has no evidence that the Village is liable under Monell.[1] The Village's motion is fully briefed and ripe for ruling.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999). Indeed, a party opposing summary judgment must do more than raise a "metaphysical doubt" as to the material facts. See Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997) (citing Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1355-56 (1986)). Summary judgment is appropriately entered against

---

[1]A § 1983 suit against public officials in their official capacity is a suit against the governing body itself. See Armstrong v. Squadrito 152 F.3d 564, 577 (7th Cir. 1998). Therefore, the court construes the Village's motion to include any claims made against Defendants Police Chief Woods and Lt. Snooks in their official capacity. The remaining individual Defendants, Chief Woods and Lt. Snooks, have filed a renewed motion for summary judgment on the claims against them in their individual capacity. That motion is under advisement, and is not the subject of this opinion.

a party that fails to demonstrate the existence of an essential element of that party's case.  See Gleason 118 F.3d at 1139 (citing cases).   Put another way, summary judgment is the stage of a lawsuit where a party must present evidence that could convince a trier of fact to accept his version of events.  See Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (citing Schacht v. Wisconsin Dep't of Corrections, 175 F.3d 497, 503-04 (7th Cir. 1999)).  In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence.  See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).  The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party.  Fed. R. Civ. P. 56(c), see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995).  "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences."  See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996).  The choice between reasonable inferences from facts is a jury function.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**B.   42 U.S.C. § 1983 and Monell:**

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

In Monell, the United States Supreme Court held that local governmental entities are "persons" as that term is used in § 1983. See Monell, 436 U.S. at 689; see also Board of County Com'rs of Bryan County v. Brown, 117 S. Ct. 1382, 1387-88 (1997) (discussing Monell). The Supreme Court also ruled that a local governmental entity does not incur liability simply because it employs a tortfeasor. See Board of County Com'rs of Bryan County, 117 S. Ct. at 1388. Thus, it is well settled that there is no vicarious liability, or *respondeat superior* liability, against local governmental entities. See Gable v. City of Chicago, – F.3d –, No. 01-1941, 2002 WL 1456247, at * -5 (7th Cir. July 8, 2002); Gernetzke v. Kenosha Sch. Dist. No. 1, 274 F.3d 464, 467-68 (7th Cir. 2001); McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995); Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 735 (7th Cir. 1994). Instead, local governmental entities are liable only when they are directly responsible for the deprivation of a federally secured right. See Bennett v. Roberts, – F.3d –, No. 01-1939, 2002 WL 1420408 (7th Cir. July 2, 2002); Gernetzke, 274 F.3d at 468.

Consistent with the absence of vicarious liability, a local municipality can be liable under § 1983 only if the municipality has a policy or rule with the effect of law that violates the plaintiff's civil rights. See Bennett, 2002 WL 1420408; Auriemma v. Rice, 957 F.2d 397, 399-401 (7th Cir. 1992). There are three avenues open for a plaintiff to prove that a municipality's policy has caused a violation of his constitutional rights: "(1) an express policy that, when enforced, causes a constitutional deprivation . . . ; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or use with the force of law. . . ; or (3) . . . that [a] constitutional injury was caused by a person with final policymaking authority." Baxter by Baxter, 26 F.3d at 734-35 (citations and internal quotation

4

marks omitted); see also Auriemma, 957 F.2d at 399-401 (discussing the requirement that a local government's policy cause the plaintiff's harm, and that vicarious liability does not exist for a § 1983 claim against a municipality). In this case, McGreal concedes that there is no express policy or widespread practice of the Village that has violated his First Amendment rights. (See R. 97, pg. 5.) Thus, the issue is whether the McGreal has evidence to support a "policymaker" claim against the Village.

Monell's "policymaker" prong is not a simple determination of whether a person with policy making authority caused a constitutional deprivation. See Gernetzke, 274 F.3d at 467-68; Auriemma, 957 F.2d at 399-401; cf. Taylor v. Carmouche, 214 F.3d 788, 791 (7th Cir. 2000) (affirming the dismissal of a policymaker claim). Municipal liability does not inexorably flow from a constitutional tort committed by a policymaker. See Taylor, 214 F.3d at 791; Auriemma, 957 F.2d at 399-401; compare Board of County Com'rs of Bryan County, 117 S. Ct. at 1389 (dicta discussing when policymaker liability may apply). Not every action by a policymaker represents the policy of the municipality. See Auriemma, 957 F.2d at 399-401. If that were the case, the third prong of Monell would lead to vicarious liability against a municipality simply because a policymaker engaged in malfeasance. Id. at 400 ("If it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability. . . .That a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.'"); Gernetzke, 274 F.3d at 469 (discussing the improper analysis of equating finality with policy, because it collapses direct and derivative liability together).

The "policymaker" prong of Monell requires more than the act of a policymaker. It is necessary for the policymaker's act to have been in conformance with, or in the creation of,

governmental rules that have the effect of law (and then the rule must violate the plaintiff's constitutional rights). See Auriemma, 957 F.2d at 400; see also Gernetzke, 274 F.3d at 469-70 (distinguishing between the apex of authority and the local government's conferral of that authority to a policymaker to act in conformity therewith). And, a policymaker's decision will rarely have the force of policy unless the decision will govern similar issues in the future. See Auriemma, 957 F.2d at 400 ("Unless today's decision ought to govern tomorrow's case under a law or a custom with the force of law, it cannot be said to carry out the municipality's policy."); compare Gernetzke, 274 F.3d at 468 (holding that the form of governmental action, whether it be legislative or executive, does not matter); Board of County Com'rs of Bryan County, 117 S. Ct. at 1389 (dicta noting that the "one time" decision of a policymaker may lead to municipal liability depending on the circumstances at hand). A policymaker who acts outside of the rules does not thereby set new policy. Instead that person frustrates and violates the government's policy. Taylor, 214 F.3d at 791; Auriemma, 957 F.2d at 400.

McGreal bases his policymaker argument on Chief Woods' assertion that he was acting as a municipal policymaker with respect to some of the allegedly retaliatory acts. McGreal also submits that he has sufficient evidence to demonstrate that Mayor Andrews had policymaking authority for the alleged retaliation against McGreal. Construing the facts in the light most favorable to McGreal, the court accepts McGreal's position that Chief Woods and Mayor Andrews had policymaking authority for the alleged retaliation.[2]

---

[2]Defendants object to McGreal's assertion of Mayor Andrews having final policymaking authority. For the purposes of this opinion only, the court overrules the objection, and will assume *arguendo* that the Mayor has that authority.

Standing alone, however, the policymaker status of Chief Woods and Mayor Andrews does not result in liability for the Village. As explained above, the policymaking authority of Chief Woods and Mayor Andrews does not turn their every action into Village policy. See Auriemma, 957 F.2d at 400. McGreal recognizes that final decision making authority is not enough to set policy, but his argument fails to distinguish between the policymaking authority of Chief Woods and Mayor Andrews and their decision making. McGreal's argument boils down to: "The Village is liable because persons with policymaking authority retaliated against me." What McGreal lacks is evidence of the crucial link between the policymakers' acts and Village policy.

The Seventh Circuit has repeatedly held that unless a municipality has a policy of retaliating against free speech, it cannot be liable for the retaliatory acts of policymakers. See Taylor, 214 F.3d at 791; Auriemma, 957 F.2d at 400. The Taylor opinion states the law succinctly:

> Unless the City had a policy of retaliating against protected speech. . .it cannot be liable. If [the policymakers] retaliated against protected speech, then they violated rather than implemented [the City's] personnel policy, so the § 1983 claim against the City was rightly dismissed."

Taylor, 214 F.3d at 791; see also Auriemma, 957 F.2d at 400 ("Liability for unauthorized acts is personal; to hold the municipality liable, Monell tells us, the agent's action must implement rather than frustrate the government's policy."). McGreal presents no evidence of a Village policy requiring adverse employment actions to be taken against employees that engage in free speech. Absent such evidence, the allegedly retaliatory acts of Village policymakers cannot create direct liability for the Village. Taylor, 214 F.3d at 791; Auriemma, 957 F.2d at 400.

## III.   CONCLUSION

For the foregoing reasons, the Village of Alsip's motion for summary judgment is granted.

The court grants summary judgment in favor of Village of Alsip, and Chief Woods and Lt. Snooks

in their official capacities as to all of Plaintiff's claims.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 8/2/02